**UNITED STATES BANKRUPTCY COURT**

**EASTERN DISTRICT OF CALIFORNIA**

```
In re:                          )    Case No. 18-25306-B-7
                                )
RIZAL JUCO GUEVARRA,            )    DC No. BHS-4
                                )
                                )
                Debtor(s).      )
_____ )
```

**MEMORANDUM DECISION**[1]

This case involves application of the principle that "when a debtor claims a *state-created* exemption, the exemption's scope is determined by state law, which may provide that certain types of debtor misconduct warrant denial of the exemption." Law v. Siegel, 571 U.S. 415, 425 (2014) (emphasis in original). More precisely, the issue before the court is whether the debtor's "wild card" exemption claimed under California Code of Civil Procedure § 703.140(b)(5) should be disallowed on the basis of equitable estoppel.[2]

---

[1] Oral argument will not assist in the decision-making process or resolution of this matter. See Local Bankr. R. 9014-1(h), 1001-1(f). The court will therefore decide this matter on the papers. The court has reviewed and takes judicial notice of the docket. See Fed. R. Evid. 201(c)(1).

[2] The debtor's supplemental response is not accurate in its portrayal of the debtor. The debtor is, and throughout the case has been, represented by an attorney. In fact, he has been represented by three attorneys. The first was a long-time bankruptcy practitioner who is now suspended. The second provided the debtor free legal advice and filed documents for the debtor before formally substituting in the case. The third and current attorney considers the first attorney competent.

- 1 -

## I. Factual and Procedural Background

The present dispute arises out of real property located at 4134 Glascow Drive, North Highlands, California ("Property"). Debtor Rizal Guevarra acquired an interest in the Property pursuant to a July 2, 2014, grant deed which conveyed the Property to the debtor and his nephew as joint tenants. The debtor and his nephew subsequently encumbered the Property by a May 27, 2016, deed of trust given as security for a loan. The deed of trust also reflects that title to the Property is vested in the debtor and his nephew as joint tenants.

The debtor filed the voluntary petition that commenced this chapter 7 case on August 23, 2018. On the initial Schedule A/B, the debtor valued the Property at $217,612.00 and stated that the value of the portion he owned was "$0.00." In the space provided for a description of the debtor's ownership interest appeared the notation: "Co-signed for Nephew; Debtor has no interest in property." The debtor also did not claim the Property or any interest in it exempt on the initial Schedule C. In fact, the debtor used the "wild card" exemption on the initial Schedule C to exempt a $22,306.20 Wells Fargo 401(k) bank account.

The debtor appeared at the § 341(a) creditors' meeting on September 25, 2018, at which time he reaffirmed the accuracy of the initial Schedules under oath. During the § 341(a) creditors' meeting the debtor was also made aware of the chapter 7 trustee's position that the debtor owned a 50% interest in the Property.

On October 11, 2018, the chapter 7 trustee filed a notice for creditors to file proofs of claim. The notice was served on the debtor and his attorney.

Approximately two weeks later, on October 25, 2018, the chapter 7 trustee employed an attorney to assist with the sale of the Property or the debtor's interest in it. Several weeks later, on November 9, 2018, the chapter 7 trustee's attorney again informed the debtor's attorney of the estate's position that the debtor owned a 50% interest in the Property. A little over a month later, on December 13, 2018, the chapter 7 trustee's attorney sent the debtor's nephew a letter informing the nephew that the debtor's 50% interest in the Property was property of the bankruptcy estate and that the chapter 7 trustee intended to "move to sell either [the debtor's] interest in the Subject Property or the entire Subject Property." Several days later, on December 19, 2018, the debtor's attorney sent the chapter 7 trustee's attorney a letter in which he stated that "the debtor has no interest in the property."

Meanwhile, on August 20, 2019, the chapter 7 trustee filed an adversary proceeding in which he sought to sell the Property in its entirety. Having the good fortune to find a buyer for the debtor's 50% interest, the chapter 7 trustee dismissed the adversary proceeding and instead pursued a sale of the debtor's interest in a motion filed on November 1, 2019.

The debtor opposed the sale motion on December 6, 2019. The debtor filed an opposition which reiterated that he "is not the owner of the subject property; he is merely a co-signer for his nephew. Debtor has no interest in the property (see schedule A that describes the property)."

The debtor repeated these assertions three days later, on December 9, 2019, in a motion to convert the chapter 7 case to a

chapter 13 case. A declaration filed with the conversion motion stated that the debtor is "not the owner of the property, [he is] just a co-signer." The conversion motion similarly stated that the debtor "is not the owner of the property, he is just a co-signer. Debtor has no interest in the property as attested to in Schedule A of the petition filed on August 23, 2018 (Doc 1). The property belongs to debtor's nephew." At the same time-and in what would appear to be the proverbial "Freudian slip"-the conversion motion also stated that "[t]he reason for conversion is because the Trustee is demanding $32,000 to sell *Debtor's portion (50%) interest in property listed in debtor's schedules known as 4134 Glascow Drive, North Highlands, CA.*" (Emphasis added).

　　The sale motion was heard and granted the following day, on December 10, 2019. Based on evidence that established that title to the Property was vested in the debtor and his nephew as joint tenants, the court ruled that the debtor held a 50% interest in the Property and the interest was subject to sale. The order granting the sale motion and approving the sale of the debtor's 50% interest to a third-party overbidder for $32,500.00 was also filed on December 10, 2019. The debtor did not appeal the sale order.

　　Over a year and a half after the initial Schedules were filed, after the debtor testified to their accuracy, and after the debtor was informed that the trustee considered his 50% interest in the Property an asset of the bankruptcy estate; over a year after the debtor first represented that the interest had no value and, in any case, he did not own or have an interest in

- 4 -

the Property; and after the chapter 7 trustee incurred sale-related expenses in excess of $12,000.00, on March 18, 2020, the debtor filed amended Schedules A/B and C in which he claimed an interest in the Property and claimed the proceeds from the sale of the interest exempt under California's "wild card" exemption. The debtor valued his interest in the Property at $32,500.00 in amended Schedule A/B. In the space of amended Schedule A/B for describing the nature of the debtor's ownership interest in the Property, the debtor wrote: "Debtor interest in said property it [sic] was sold for $32,500.00 by chapter 7 trustee[.]" Under "Other information you wish to add," the debtor wrote: "Debtor claims said funds under exemption statute CCP 703." On amended Schedule C, the debtor added the $32,500.00 sale proceeds and claimed $27,915.00 exempt under California's "wild card" exemption. In so doing, the debtor changed his initial Schedule C "wild card" exemption from the Wells Fargo 401(k) bank account.

The chapter 7 trustee objected to the debtor's claim of exemption on March 30, 2020. The chapter 7 trustee asserted that the debtor had not acted in good faith and was equitably estopped from asserting an exemption in the sale proceeds. The chapter 7 trustee also asserted that if he had known that the debtor would exempt the sale proceeds he would not have sold the debtor's 50% interest and incurred the expense of selling the interest in the first instance.

The debtor filed an opposition to the chapter 7 trustee's objection on April 21, 2020. The opposition stated that the debtor did not act in bad faith. It also stated that the debtor changed his exemption after the court ruled during the sale

- 5 -

motion hearing that he owned a 50% interest in the Property.

Addressing only the bad faith issue, in a memorandum and order filed on June 1, 2020, the court sustained the chapter 7 trustee's objection on the basis of bad faith. The debtor timely appealed the decision on June 12, 2020.

The Bankruptcy Appellate Panel for the Ninth Circuit heard the debtor's appeal on March 18, 2021, and issued an unpublished memorandum decision on March 29, 2021. Guevarra v. Whatley (In re Guevarra), 2021 WL 1179619 (9th Cir. BAP March 29, 2021). The memorandum decision reaffirms that a debtor as an exemption claimant bears the burden of proof on a California exemption, confirms that state-created exemptions are governed by state law which includes equitable law, recognizes that an exemption created under California law may be disallowed on state law equitable grounds, and states that equitable grounds for disallowing an exemption may include equitable estoppel. Nevertheless, finding bad faith inapplicable to the "wild card" exemption, the memorandum decision vacated this court's June 1, 2020, memorandum and order and remanded with instructions for this court to consider whether the debtor's "wild card" exemption may be disallowed on California state law equitable estoppel grounds. The court now proceeds to do so.

## II.  Legal Standards

Generally, when a debtor files bankruptcy all of the debtor's property becomes property of the bankruptcy estate. See 11 U.S.C. § 541. Federal law provides avenues for a debtor to exempt certain property. See 11 U.S.C. § 522(d). Congress has

- 6 -

also authorized states to opt out of the federal bankruptcy exemptions created by § 522(d) which means the federal exemption scheme can be supplanted by states that choose to provide their own exemptions. See 11 U.S.C. § 522(b)(2); Granger v. Watson (In re Granger), 754 F.2d 1490, 1492 (9th Cir. 1985) ("[A] state that has opted out has considerable freedom in creating exemptions and eligibility requirements for those exemptions."). California exercised the § 522(b)(2) option to opt out. See Cal. Code Civ. Proc. § 703.130.

A bankruptcy court construing a California exemption applies a state-law rule of decision. In re Tallerico, 532 B.R. 774, 780 (Bankr. E.D. Cal. 2015).[3] In other words, "[l]ike all federal courts when addressing a state-law rule of decision, the bankruptcy court is predicting what the California Supreme Court would rule if it were presented with the question." Id. In that endeavor, state law governs because "when a debtor claims a *state-created* exemption, the exemption's scope is determined by state law[.]" Law, 571 U.S. at 425 (emphasis in original); Wolfe v. Jacobson (In re Jacobson), 676 F.3d 1193, 1199 (9th Cir. 2012); Philips v. Gilman (In re Gilman), 887 F.3d 956, 964 (9th Cir. 2018).

State law includes state statutory law. Elliott v. Weil (In re Elliott), 523 B.R. 188, 194 (9th Cir. BAP 2014); Kornhauser v. Block (In re Block), 2016 WL 3251406 at *3 (9th Cir. BAP June 3,

---

[3] 28 U.S.C. § 1652 also states: "The laws of the several states, except where the Constitution or treaties of the United States or Acts of Congress otherwise require or provide, shall be regarded as rules of decision in civil actions in the courts of the United States, in cases where they apply."

2016). It also includes state equitable law. Gilman, 887 F.3d at 966 (citing (Gray v. Warfield (In re Gray), 523 B.R. 170, 175 (9th Cir. BAP 2014)); see also Guevarra, 2021 WL 1179619 at *4.

Equitable estoppel is an equitable basis under California law on which a state-created exemption may be disallowed. Parker v. Smith (In re Smith), 2017 WL 1457942 at *4-*5 (9th Cir. BAP April 24, 2017); see also In re Gonzalez, 2017 WL 2787594 at *7 (Bankr. C.D. Cal. June 27, 2017) (disallowing a tools of trade exemption under Cal. Code Civ. Proc. § 704.060(a)(1) on the basis of equitable estoppel); In re Aubry, 558 B.R. 333 (Bankr. C.D. Cal. 2016) (disallowing a settlement annuity exemption under Cal. Code Civ. Proc. § 703.140(b)(10)(C) on the basis of equitable estoppel); In re Martinez, 2016 WL 7338405 at *4-*7 (Bankr. E.D. Cal. Dec. 15, 2016) (applying equitable estoppel analysis to a "wild card" exemption under Cal. Code Civ. Proc. § 703.140(b)(5) but finding it inapplicable based on the particular facts of the case).

Under California law, a party asserting equitable estoppel must establish the following: (a) a representation or concealment of material facts (b) made with knowledge, actual or virtual, of the facts (c) to a party ignorant, actually and permissibly, of the truth (d) with the intention, actual or virtual, that the ignorant party act on it, and (e) that party was induced to act on it. Simmons v. Ghadari, 44 Cal.4th 570, 584 (2008); Behnke v. State Farm Gen. Ins. Co., 196 Cal.App.4th 1443, 1462 (2011) (quotation omitted); see also Lua v. Miller, 629 Fed.Appx. 851, 852 (9th Cir. June 27, 2017) (applying California law).

**III. Analysis**

A.

Concealment of a Material Fact

By claiming the proceeds from the sale of his interest in the Property exempt under the "wild card" exemption the debtor implicitly acknowledges that the interest could have also been exempted under Cal. Code Civ. Proc. § 703.140(b)(5). See generally, Orange County's Credit Union v. Garcia (In re Garcia), 707 F.3d 861, 864 (9th Cir. 2013) (holding that the "wild card" exemption is applicable to "any" property and "'[A]ny' means *any*" up to the statutory amount). Indeed, proceeds are a conversion of an exempt asset at least when disposition of the asset is involuntary. See Langley v. Finnall, 2 Cal.App. 231, 233 (1905). Also noteworthy is that the chapter 7 trustee objects to the debtor's "wild card" exemption claimed in the sale proceeds on the basis of the debtor's conduct and not on the basis that exemption is improper under-or outside the scope of-the "wild card" exemption.

The debtor concealed the "wild card" exemption otherwise available to exempt his interest in the Property. He did so by omitting the exemption from the initial Schedules and thereafter testifying at the § 341(a) meeting that the initial Schedules were accurate. See Aubry, 558 B.R. at 346.[4]

---

[4] The court is mindful that on remand from Gilman, 887 F.3d 956, the bankruptcy court construed the Ninth Circuit's Lua decision to mean that "the Court of Appeals essentially held that a debtor's schedules can not form the basis of an equitable estoppel claim because the parties are aware that the debtor may amend her schedules at any time." In re Gilman, 608 B.R. 714, 729 (Bankr. C.D. Cal. 2019), *aff'd sub nom.*, Tuxton China, Inc.

- 9 -

In correspondence, and in documents and declarations filed during the case, the debtor repeatedly told the chapter 7 trustee that his interest in the Property had no value and, in any case, he did not own or have an interest in the Property. In so doing, and in not so many words, the debtor essentially told the chapter 7 trustee that his interest in the Property was either not worth exempting or that it was not exempt. Indeed, what debtor would waste an exemption on a valueless asset? More important, what debtor could exempt property that he or she does not own or have an interest in? See In re Scotti, 456 B.R. 760, 763 (Bankr. D.S.C. 2011) ("[I]n order to exempt property, not only must the property be part of the bankruptcy estate under § 541, the debtor claiming the exemption must own the property, or have an interest in the property." (Quotation omitted))."

Concealment of the exemption is also material. The amended Schedule A/B values the debtor's interest at $32,500.00 and the exemption at $27,915.00. That makes the exempted proceeds by far the debtor's most valuable asset inasmuch as it comprises over 40% of the debtor's assets which, valued on amended Schedules A/B and C, total $80,881.20. Underscoring this materiality is that in the initial Schedule A/B the debtor valued his interest in the Property at $0.00, which is not the true value of the asset.

     B. Made With Knowledge of the Facts

The 2014 grant deed and the 2016 deed of trust provided the

---

v. The Oneida Grp. Inc. (In re Gilman), 2020 WL 7087703 (C.D. Cal. Oct. 28, 2020), *appeal docketed*, No. 20-56279 (9th Cir. Dec. 2, 2020). Here, however, concealment extends well beyond the initial Schedules as discussed infra.

- 10 -

1　debtor with notice of the nature and extent of his interest in
2　the Property.  The conversion motion demonstrates that the debtor
3　was aware of both inasmuch as it describes the interest as the
4　"Debtor's portion (50%) interest[.]"
5　　　Also noteworthy is that the conversion motion was filed to
6　prevent the chapter 7 trustee from selling the debtor's interest
7　by placing the Property under the debtor's exclusive control in a
8　chapter 13 case.  <u>See</u> 11 U.S.C. §§ 1303, 1306(a).  The conversion
9　motion thus demonstrates that the debtor knew before his interest
10　was sold that he could extricate the interest from the chapter 7
11　estate much in the same manner as if it were exempted.  That the
12　debtor sought to use the conversion motion as a *de facto* "wild
13　card" exemption without actually (and legitimately) claiming the
14　exemption is further indica of knowledge and concealment.

### C.

### To a Party Ignorant of the Truth

17　　　The chapter 7 trustee did not know that the debtor would
18　exempt the sale proceeds after the debtor's interest was sold.
19　How could he?  By repeatedly telling the chapter 7 trustee that
20　the interest was a valueless non-exempt asset the debtor
21　essentially assured the chapter 7 trustee that he could safely
22　administer the interest as asset of the chapter 7 estate.  <u>See</u> 11
23　U.S.C. § 704(a)(1).
24　　　The chapter 7 trustee's course of conduct also demonstrates
25　that he was not aware that the debtor would exempt the sale
26　proceeds after the debtor's interest was sold.  No reasonable
27　trustee would incur the expense of selling an asset knowing that
28　the debtor will exempt the sale proceeds.  In other words, no

1 reasonable trustee would knowingly sell an exempt asset
2 exclusively for a debtor's benefit.[5]

3 　　In reaching this conclusion, the court notes several
4 distinctions on this element between this case and the Ninth
5 Circuit's unpublished Lua decision.

6 　　The bankruptcy court in Lua applied California equitable
7 estoppel law to disallow the debtor's homestead exemption which
8 the debtor claimed in the initial schedules she filed with her
9 petition. In re Lua, 529 B.R. 766, 768 (Bankr. C.D. Cal. 2015).
10 The debtor then filed first amended schedules in which she
11 disavowed any interest in the residence except for a community
12 property interest for purposes of a divorce from her non-debtor
13 husband which eliminated the homestead exemption. Id. Relying
14 on the elimination of the homestead exemption, the trustee spent
15 significant time and incurred significant expenses marketing and
16 selling the debtor's residence. Id. at 769-71. Some three years
17 after the case was filed, thirty-three months after the first
18 amended schedules were filed and after much investigation,
19 significant litigation, the retention of a broker and an
20 agreement with the debtor's non-debtor ex-husband to sell the
21 residence, the debtor filed second amended schedules in which she
22 asserted a community interest and an exemption in the residence.
23 Id. at 771. The trustee objected asserting bad faith, estoppel,

---

[5] The court is familiar with the chapter 7 trustee appointed in this case. He has made numerous appearances before the undersigned judge. He is professional and knowledgeable. He understands and appreciates the role of a chapter 7 trustee. Therefore, to reiterate, the court does not believe that the chapter 7 trustee sold the debtor's interest in the Property knowing that the debtor would exempt the sale proceeds.

and laches as grounds to disallow the amended homestead exemption. Id. The bankruptcy court sustained the trustee's objection and disallowed the debtor's amended homestead exemption on California law equitable estoppel grounds. Id. at 779.

The district court affirmed the bankruptcy court's decision. Lua v. Miller (In re Lua), 551 B.R. 448 (C.D. Cal. 2015).

The Ninth Circuit reversed in an unpublished memorandum decision. Lua, 692 Fed.App'x. 851. In so doing, the Ninth Circuit reasoned that the trustee could not legitimately rely on the debtor's assertion in the first amended schedules that she held no interest in the property when the trustee knew that the debtor had earlier claimed a homestead exemption in the initial schedules and should have also known that schedules are subject to amendment at any time under Bankruptcy Rule 1009(a) if circumstances changed as they did. Id. at 852-53. And it is in these regards that there are significant factual distinctions between this case and Lua.

First, as noted above, equitable estoppel in this case is not based solely on or limited to a concealment in the Schedules. It is based on concealment that occurred repeatedly throughout the case before the debtor's interest was sold.

Second, unlike Lua where the trustee had notice from prior schedules that the debtor may further amend the schedules to re-claim a previously-claimed exemption if circumstances changed, here, the trustee had no such notice. In fact, how could the chapter 7 trustee anticipate that the debtor would amend the Schedules to exempt proceeds from the sale of an asset that the debtor repeatedly assured the chapter 7 trustee had no value and

- 13 -

was not exempt? Also recall that the "wild card" exemption was already used to exempt the Wells Fargo 401(k) bank account. That too lends itself to a lack of notice that the Schedules would later be amended to use the same exemption to exempt proceeds from the sale of a different asset. See In re Gonzalez, 620 B.R. 296, 319-20 (Bankr. C.D. Cal. 2019).

Third, unlike Lua, there are no changed circumstances. The debtor's opposition to the chapter 7 trustee's objection to the claim of exemption states that the debtor changed his exemption only after the court ruled that he had a 50% interest in the Property. Technically, that is correct insofar as the amended Schedule C followed the sale order by some three months. However, the debtor's statement is not entirely accurate when viewed in its proper context.

The grant deed and the deed of trust which vested title to the Property in the debtor and his nephew as joint tenants pre-date the petition and, thus, were known to the debtor when the petition was filed. The conversion motion in which the debtor effectively acknowledged his 50% interest in the Property also preceded the court's ruling on the sale motion. The debtor was therefore aware of his 50% interest in the Property *before* the court ruled that he held that interest in the course of granting the sale motion. The debtor was also aware that he could exempt the interest-or obtain a functionally equivalent result by removing it from the chapter 7 estate without calling the extrication an exemption-before the sale motion was heard and determined.

The point here is that the debtor had the requisite

- 14 -

1 knowledge of the nature and extent of his interest in the
2 Property as well as knowledge that would have allowed him to
3 exempt the interest *before* the court ruled in the context of the
4 sale motion that the debtor held a 50% interest subject to sale.
5 So in reality the court's ruling on the sale motion changed
6 nothing from the debtor's perspective.  The changed circumstance
7 found to be critical in Lua to support an exemption in amended
8 schedules do not exist here.

9 　　　If anything, the facts of this case more closely align with
10 Aubry, 558 B.R. at 345-50.  In Aubry, the debtor was equitably
11 estopped under California law from claiming an exemption in a
12 settlement annuity.  The debtor failed to claim the annuity in
13 her original Schedules, testified that her Schedules were
14 accurate, and valued the annuity at $0.00 in first amended
15 schedules.  The trustee relied upon debtor's decision to wait a
16 year to amend her schedules by incurring over $11,000.00 in
17 attorney's fees without any knowledge or indication that the
18 debtor would file second amended schedules to exempt the annuity.

D.

<u>With the Intention That the Party Act on It</u>

21 　　Intent does not require intent to deceive and it need not be
22 fraudulent.  Aubry, 558 B.R. at 349 (citing California
23 decisions).  It is sufficient if the debtor had an opportunity to
24 act and thereby prevent adverse consequences to another party but
25 remained silent and failed to do so.  Id. at 350 (citing
26 California decisions).  That is precisely what occurred here.

27 　　　From communications regarding the chapter 7 trustee's intent
28 to sell the debtor's interest in the Property at the inception of

the case, to the employment of an attorney to sell the interest, to the filing of an adversary proceeding to sell the entire Property, and ultimately the filing of a noticed motion to sell the debtor's interest there were ample opportunities for the debtor to properly exempt his interest in the Property. And yet he failed to do so at any of these critical points. Instead, in the face of each of these critical developments in the case, all of which undeniably signaled the chapter 7 trustee's intent and opportunity to sell the debtor's interest in the Property, the debtor remained steadfastly silent and claimed no exemption.

E.

<u>That Party was Induced to Act on It</u>

The debtor's concealment of what amounts to a known exemption caused the chapter 7 trustee to incur significant sale-related expense in the course of administering the asset that generated the proceeds the debtor now claims are exempt. The proceeds are insufficient to pay the costs of sale and the exemption. The exemption is therefore prejudicial.

**IV.**

**Conclusion**

Based on the foregoing, the court will disallow the debtor's "wild card" exemption claimed in the proceeds the estate received upon the sale of the debtor's 50% interest in the Property. The chapter 7 trustee's objection is therefore **SUSTAINED** on the basis of equitable estoppel under California law. The debtor's "wild card" exemption is **DISALLOWED**.

Based on this memorandum decision, the hearing on June 8,

2021, at 9:30 a.m. will be **VACATED**.

A separate order will issue.

**Dated:** June 07, 2021

Christopher D. Jaime, Judge
United States Bankruptcy Court

**INSTRUCTIONS TO CLERK OF COURT**

**SERVICE LIST**

The Clerk of Court is instructed to send the attached document, via the BNC, to the following parties:

T. Mark O'Toole
1006 H Street
Modesto CA 95354

Barry H. Spitzer
980 9th Street, Suite 380
Sacramento CA 95814